**CHAMBERS OF**
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

August 31, 2011


William J. Nicoll, Esq.
Jenkins, Block & Associates, P.C.
The Symphony Center, Suite 206
1040 Park Avenue
Baltimore, MD 21201

Alex S. Gordon, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

> Re:  Joyce M. Richardson v. Michael J. Astrue,
>      Commissioner, Social Security, Civil No. SKG-10-614


Dear Counsel:

Plaintiff, Joyce M. Richardson, by her attorney, W. James Nicoll of Jenkins, Block & Associates, P.C., filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied her claim for Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act").

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c)

and Local Rule 301.  (ECF No. 3; ECF No. 7).  Currently pending
before the Court are cross motions for summary judgment, and
plaintiff's motion, in the alternative, for remand.  (ECF No.
19; ECF No. 24).  No hearing is necessary.  Local Rule 105.6.
For the reasons that follow, the Court hereby DENIES Plaintiff's
Motion for Summary Judgment or, In the Alternative, Remand (ECF
No. 19), GRANTS Defendant's Motion for Summary Judgment (ECF No.
24).

## I.  PROCEDURAL HISTORY

Plaintiff, Joyce M. Richardson, originally filed for SSI
under Title XVI of the Act, 42 U.S.C. § 1381 et seq., on January
1, 2006, alleging disability beginning November 1, 2002.  (R.
12).  The Social Security Administration ("SSA") denied Ms.
Richardson's applications at the initial and reconsideration
levels.  (R. 57-58).  A hearing was held on March 12, 2007
before Administrative Law Judge ("ALJ") Melvin D. Benitz who, on
May 5, 2008, denied Ms. Jackson's applications, determining that
she was not disabled within the meaning of the Act.  (R. 12-23).
The Appeals Council denied Ms. Richardson's request for review,
making the ALJ's opinion the final decision of the agency.  (R.
1-3).  Ms. Richardson now seeks review of that final decision
pursuant to 42 U.S.C. § 405(g).  (ECF No. 19).

## II.  FACTUAL BACKGROUND

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record, hereby adopts it.  (ECF No. 24, 2-9).

## III.  ALJ FINDINGS

In reviewing a claimant's eligibility for SSI, the ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act.  20 C.F.R § 416.920(a).  Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further.  20 C.F.R. § 404.1520(a)(4).  After proceeding through each of the required steps, the ALJ in this case concluded that Ms. Richardson is not disabled as defined by the Act.  (R. 23).

At the first step of the sequential analysis, the claimant must prove that she is not engaged in "substantial gainful

activity."[1]  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that

the claimant is engaged in "substantial gainful activity," she

will not be considered disabled.  Id.  Applying 20 C.F.R.

416.920(b) and 416.971 et seq., the ALJ determined that Ms.

Richardson has not engaged in substantial gainful activity since

January 1, 2006, the application date.  (R. 14).

    At the second step of the sequential analysis, the ALJ must

determine whether the claimant has a severe, medically

determinable impairment or a combination of impairments that

limit her ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521,

416.921.  In addition, there is a durational requirement that

the claimant's impairment last or be expected to last for at

least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that

Ms. Richardson has several severe impairments, including

diabetes, diabetic neuropathy, obesity,[2] anxiety and depression.

(R. 14).

    At step three, the ALJ considers whether the claimant's

---

[1] Substantial gainful activity is defined as "work activity that is both
substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial
if it involves doing significant physical or mental activities and even if it
is part time or if the plaintiff is doing less, being paid less, or has fewer
responsibilities than when she worked before.  20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household
tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. §
416.972(c).
[2] Ms. Richardson's height and weight correspond to a body mass index ("BMI")
of 43.3 to 46.9; a BMI of over 30.0 is considered obese.  (R. 14).

impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"
in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing" or "LOI").  20
C.F.R. § 416.920(a)(4)(iii).  Here, the ALJ found that although
Ms. Richardson has the aforementioned severe impairments, she
does not have an impairment or combination of impairments that
meet or medically equal a listing impairment.  (R. 15).
Specifically, the ALJ noted that while Ms. Richardson was
limited by foot pain and dizziness, she could still care for her
personal needs, such as preparing meals, doing laundry and going
to church.  (Id.).  The ALJ found that at the time of her
hearing in April 2008, the plaintiff was "much more limited in
her daily activities due to pain and dizziness, but not
depression or anxiety."  (Id.).  She did not drive due to
dizziness and anxiety attacks.  (Id.).  She had no trouble
getting along with others and could follow simple directions,
but had moderate difficulty with short term memory and
concentration.  (R. 15-16).  The ALJ found no evidence of
decompensation.  (R. 16).  In light of these factual
determinations, the ALJ found at the second and third steps of
the sequential evaluation that Ms. Richardson's mental
impairments, considered singly and in combination, do not meet
the criteria in listings 12.04 or 12.06.  (R. 15-16).

Before an ALJ advances to the fourth step of the sequential analysis, he must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis despite limitations from impairments. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2). Here, the ALJ determined that Ms. Richardson has the RFC to perform a range of light work. (R. 16). Nevertheless, she is limited to sitting for 30 minutes and standing for 10 minutes on an alternative basis throughout the day, must avoid vibration, heights and hazardous machinery, can do no prolonged climbing of ramps and stairs, balancing, stooping, climbing ladders, ropes or scaffold, and is mildly limited in her ability to push and pull with her right upper extremity. (R. 16). Furthermore, she is limited, by pain and mental impairments, to simple, routine work with low stress, requiring low concentration and memory, and little interaction with co-workers and supervisors. (Id.).

In reaching this RFC, the ALJ determined that Ms. Richardson's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements

6

concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC. (R. 17). The ALJ found that the medical evidence does not support Ms. Richardson's claim that she has been unable to perform work activities since 2002, as treatment records do not substantiate the purported functionally limiting effects of her pain or document her dizziness or anxiety attacks. (R. 18). In summary, the ALJ concluded that: "[t]he evidence establishes [Ms. Richardson] is limited by her physical impairments, but not to the degree she alleges, and that she is able to perform simple, routine work." (R. 21).

In reaching this conclusion, the ALJ gave little weight to the assessment of Certified Nurse Practitioner ("CNP") Elizabeth P. Sipala, who had treated Ms. Richardson since 2005 for physical and mental problems, to the extent her assessment conflicts with the RFC. (R. 18). In August 2007, Ms. Sipala completed a Medical Assessment of Ability to do Work-related Activities (Physical) form indicating that Ms. Richardson could lift only 5 pounds, stand or walk for only 1-2 hours per day, had limited abilities to climb, balance, stoop, crouch, kneel and crawl, and should avoid heights, moving machinery, temperature extremes, chemicals, dust, fumes and humidity. (Id.). The ALJ noted that Ms. Sipala had no specialized

training in orthopedics or rehabilitative medicine, and did not support the limitations in her assessment with medical evidence or thorough documentation of symptoms or other findings. (R. 18-19). For instance, Ms. Sipala referred Ms. Richardson to a podiatrist and orthopedist to address problems with her feet and knees, but no records indicate she pursued the specialized treatment. (R. 19). The ALJ further stated that Ms. Sipala's notes reflect few abnormal findings, and Ms. Sipala "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant which she seemed to uncritically accept as true." (Id.). Finally, the ALJ apparently did not afford Ms. Sipala's opinion great weight because he found it inconsistent with other evidence in the record, namely the state agency opinion and consultative examination reports. (Id.).

In 2006, Ms. Richardson twice underwent physical consultative examinations with Dr. Christian E. Jensen. (R. 19). In May 2006, Dr. Jensen concluded that, from an orthopedic standpoint, she had no significant "handicaps" in sitting, standing, walking, lifting or carrying. (Id.). Dr. Jensen noted that Ms. Richardson's diabetic peripheral neuropathy kept her up at night and that perhaps her treatment for the neuropathy had not been optimized. (Id.). In December 2006,

Dr. Jensen reported that Ms. Richardson would not have any
difficulty sitting, standing, walking, lifting, carrying or
handling objects, so long as the lifting was not of an
excessive, repetitive character. (Id.).

After Dr. Jensen's first consultative exam, the medical
consultant for the state agency completed a Physical RFC
Assessment which indicated that Ms. Richardson can lift up to 20
pounds occasionally and 10 pounds frequently, stand, walk or sit
about 6 hours in an 8 hour day, and has an unlimited ability to
push and pull. (R. 19). The RFC further advised that Ms.
Richardson should not climb ladders, ropes and scaffolds, and
should only occasionally climb ramps and stairs, balance, stoop,
kneel, crouch and crawl. (R. 19-20). The ALJ found the
suggestions that Ms. Richardson had the capacity for a full
range of light work and would have no limitation in standing or
walking to be inconsistent with the record, and accordingly
afforded them little weight. The ALJ also found that the
evidence supports Ms. Richardson's complaints of knee and foot
pain, but not to the degree alleged, although some limitation on
standing is warranted due to her neuropathy. (R. 20).

In May 2006, psychiatrist Dr. Janis Chester assessed Ms.
Richardson's mental health. (R. 20). Dr. Chester noted that
Ms. Richardson could follow simple directions, but had some

difficulty with memory and concentration. (R. 21). Dr. Chester reported that Ms. Richardson is a victim of abuse, diagnosed her with depression and borderline personality disorder, and assigned her a Global Assessment of Functioning ("GAF") level of 45, "signifying a serious functional impairment." (Id.). In 2007, Dr. Michele Walklett performed a Mental RFC Assessment on Ms. Richardson and found a number of moderate limitations, but ultimately concluded Ms. Richardson was "not significantly limited" in her abilities to understand, remember and carry out very short or even detailed instructions, and retained the capacity to perform work-related tasks from a mental perspective. (Id.; R. 238). The ALJ apparently gave some weight to Dr. Chester's conclusion that Ms. Richardson is able to follow simple instructions, but little weight to the GAF score as there was nothing in the report or records to support a finding of serious symptoms or functional limitations. (Id.). The ALJ also did not give significant weight to the state agency assessment to the extent that conflicted with Ms. Richardson's RFC for unskilled work. (Id.).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to

perform past relevant work.[3]  20 C.F.R. §§ 404.1520(e),

416.920(e).  The ALJ noted that Ms. Richardson's past work was

as a telemarketer and an encoder, both sedentary, semi-skilled

jobs.  (R. 22).  Therefore, the ALJ found that Ms. Richardson

would be unable to return to past relevant work, based on her

current RFC for only unskilled work.  (Id.).

If the claimant is unable to resume her past relevant work,

the ALJ proceeds to the fifth and final step of the sequential

analysis.  This step requires consideration of whether, in light

of vocational factors such as age, education, work experience,

and RFC, the claimant is capable of other work in the national

economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  At this step,

the burden of proof shifts to the agency to establish that the

claimant retains the RFC to engage in an alternative job which

exists in the national economy.  McLain v. Schweiker, 715 F.2d

866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050,

1053 (4th Cir. 1980).  The agency must prove both the claimant's

capacity to perform the job and that the job is available.

Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before

the agency may conclude that the claimant can perform

alternative skilled or semi-skilled work, it must show that she

---

[3] The regulations state that "impairment(s) and any related symptoms, such as
pain, may cause physical and mental limitations that affect what [one] can do
in a work setting . . . residual functional capacity is the most [one] can
still do despite [those] limitations."  20 C.F.R. § 404.1545.

possesses skills that are transferable to those alternative

positions or that no such transferable skills are necessary.

McLain, 715 F.2d at 869.

Here, the ALJ noted that Ms. Richardson was 49 years old, a

"younger individual" according to the regulations, has at least

a high school education and is able to communicate in English.

(R. 22).  The ALJ found transferability of job skills immaterial

to the determination of disability, because using the Medical-

Vocational Rules as a framework, Ms. Richardson is "not

disabled," whether or not she has transferable job skills.  See

SSR 82-41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The ALJ

further found that considering Ms. Richardson's age, education,

work experience and RFC, there is a significant number of jobs

she is capable of performing.  20 CFR 416.960(c); 416.966.  A

vocational expert ("VE") testified that Ms. Richardson would be

able to work in occupations such as office helper or non-postal

mail clerk.  (R. 22).  Based on the VE's testimony, the ALJ

found that Ms. Richardson is "capable of making a successful

adjustment to other work that exists in significant numbers in

the national economy."  (R. 23).

Based upon the sequential evaluation described above, the

ALJ ultimately concluded that Ms. Richardson had not been under

a disability, as defined in the Act, from the alleged onset date

of January 1, 2006 through the date of his decision, and recorded a finding of "not disabled." (R. 23) (citing 20 C.F.R. § 416.920(g)).

## IV. STANDARD OF REVIEW

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).  However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  Coffman, 829 F.2d at 517.  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing."  Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V.  DISCUSSION

The issue before the Court is whether substantial evidence in the record supports the ALJ's determination that Ms. Richardson is not disabled.  Ms. Richardson presents two primary arguments on appeal, that the ALJ: (1) improperly considered the VE's testimony, and (2) improperly weighed Ms. Sipala and Dr. Chester's medical opinions.  (ECF No. 19, 5-8).  The government responded to the first argument by stating that the ALJ properly reviewed the evidence and posed a hypothetical that encompassed all the limitations he found that were relevant and supported by

the record.  (ECF No. 24, 11-15).  The government responded to

the second argument by stating that the ALJ appropriately gave

Ms. Sipala's opinion little weight because she is not an

"acceptable medical source," and thus her opinion must be

afforded much less consideration than that of a treating source.

(Id. at 15-22).  After careful evaluation of the ALJ's opinion

and the record as a whole, the Court finds that the ALJ properly

evaluated the VE's testimony and properly weighed Ms. Sipala and

Dr. Chester's medical opinions.  The ALJ's conclusions are

supported by substantial evidence.  Accordingly, the Court

affirms the ALJ's decision.

## A.   ALJ Properly Evaluated the Vocational Expert's Testimony

Specifically, Ms. Richardson complains that the ALJ failed

to consider Dr. Walklett's 2007 Mental RFC Assessment, which

found Ms. Richardson was "moderately limited" in her ability to

perform several mental activities.[4]  (ECF No. 19, 5-6).  Ms.

Richardson's attorney presented these findings to the VE in a

hypothetical during the hearing, and the VE responded that a

---

[4] According to Dr. Walkett, Ms. Richardson was "moderately limited" in her
abilities to maintain attention and concentration for extended periods,
perform activities within a schedule, maintain regular attendance and
punctuality, work in coordination with or proximity to others without
distraction, complete a normal work day and work week without interruptions
from psychologically-based symptoms, perform at a consistent pace without an
unreasonable number and length of rest periods, interact appropriately with
the general public, accept instructions and respond appropriately to
criticism from supervisors, get along with co-workers or peers without
distracting them or exhibiting behavioral extremes, and respond appropriately
to changes in the work setting.  (ECF No. 19, 5-6).

combination of moderate limitations in all of those areas would prevent a hypothetical individual from performing Substantial Gainful Activity. (R. 55). The ALJ presented his own hypothetical, based on his review of the record and the VE responded that an individual with such hypothetical impairments would be able to perform light, unskilled work. (R. 51-53).

Under controlling law, a VE's testimony must be based on a consideration of all the evidence in the record and must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989); English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ does not have to include every opinion in his hypothetical, only those he credits. Kearse v. Massanari, 73 Fed. Appx. 601, 604 (4th Cir. 2003); English v. Shalala, 10 F.3d at 1085; Yoho v. Comm'r of Social Sec., 168 F.3d 484, 484 (4th Cir. 1998).

Importantly, Dr. Walklett's assessment also contains findings negative to Ms. Richardson's case, which the ALJ reasonably focused on in his analysis of the record. In addition to the eight limitations highlighted by Ms. Richardson's attorney, the assessment also cites twelve activities or skills in which Ms. Richardson is "not significantly limited," and concludes, "overall, the claimant

retains the capacity to perform work-related tasks from a mental
health perspective" (R. 236-38).  The ALJ appropriately
considered Dr. Walklett's assessment in his analysis at step
four, stating that while "a number of moderate limitations [were
found], . . . claimant was 'not significantly limited' in the
ability to understand, remember, and carry out very short or
even detailed instructions.  The consultant concluded that the
claimant retains the capacity to perform work-related tasks from
a mental perspective."  (R. 21).  As such, the ALJ reasonably
declined to give Dr. Walklett's assessment significant weight to
the extent it would conflict with the RFC for unskilled work,
finding insufficient evidence to support the moderate
limitations indicated.  (Id.).  Moreover, the ALJ noted that
while Dr. Chester wrote in a report that Ms. Richardson felt
"victimized" by former employers, this sentiment was unexplained
and undocumented in other records, and in 2006, she reported to
the state agency that she got along well with authority figures
and had never been fired or laid off from a job because of
problems getting along with people.  (Id.).

    The ALJ then presented a hypothetical to the VE, setting
forth a description of Ms. Richardson based generally on the
medical opinions and evidence that he credited.  It was fully
within the ALJ's discretion to reject the hypothetical posed by

Ms. Richardson's counsel and instead focus on his own findings. See France v. Apfel, 87 F. Supp. 2d 484, 490 (4th Cir. 2000) (noting that even proposals more restrictive than the ALJ's hypothetical may be rejected).

Furthermore, Ms. Richardson relies on a mischaracterization of the law to support her argument. Ms. Richardson's counsel cites Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001), as the only authority for the proposition that the "ALJ must explain his reasoning for rejecting VE testimony that was favorable to Richardson." (ECF No.19, 6). The facts of Zurawski are distinguishable in that the ALJ in that case ignored key records and "mention[ed] only the medical evidence favoring the denial of benefits." The Seventh Circuit found that, based on the ALJ's analysis, "we are unable to discern whether she considered the record as a whole." 245 F.3d 881, 888. In this case, the ALJ acknowledged Dr. Walklett's findings of "moderate limitations," but chose not to focus on them in light of other findings indicating Ms. Richardson was "not significantly limited" in other areas and overall was capable of performing work-related tasks. (R. 21). The ALJ's conclusions are thus reasonable based upon his consideration of the full record.

Plaintiff also contends that the ALJ erred in crediting the opinions of a medical professional, Dr. Walklett, over the VE's

response to Ms. Richardson's hypothetical.  This is simply
another way of arguing that the ALJ should have accepted
different of Dr. Walklett's findings than he did and posed a
hypothetical based on those findings, as discussed.  The ALJ's
hypothetical need not include all limitations for which there is
evidence, rather, the hypothetical must, in the ALJ's view,
"fairly set out all of [the] claimant's impairments."  Walker,
889 F.2d at 50-51.  The Court finds that it was within the ALJ's
discretion and there was substantial evidence to accept some and
reject other findings of Dr. Walklett's assessment.  In response
to the ALJ's hypothetical based upon his review of the record as
a whole, the VE concluded that Ms. Richardson is capable of
performing simple, unskilled work.  (R. 51-53).

**B.   ALJ Properly Weighed Ms. Sipala and Dr. Chester's Medical
Opinions**

Ms. Richardson contends that the ALJ improperly evaluated
the findings and opinions of Ms. Sipala and Dr. Chester.  (ECF
No. 19, 6).  The Court finds that substantial evidence supports
the ALJ's decision to afford little weight to Ms. Sipala's
opinion as she is not an "acceptable medical source"[5] but rather

---

[5] Maryland state law accords nurse practitioners considerable authority in the
diagnosis and treatment of patients.  See Md. Code Reg. 10.27.07.02.  A nurse
practitioner may, inter alia, within his or her certified area of
specialization, independently perform "[a] comprehensive physical assessment
of patients," "establish medical diagnosis for common short term and chronic
stable health problems," and "prescribe drugs."  Id. at (A)(1),(7)and(12).

an "other source."  Moreover, the ALJ found that her program
notes do not provide fulsome objective physical findings
supportive of her opinion of Ms. Richardson's disability and
that there is evidence in the record inconsistent with her
findings.  <u>See</u> SSR 06-03p; 20 C.F.R. § 404.1513(d).  In
addition, the Court finds no error in the ALJ's consideration of
Dr. Chester's opinion, as he is not a treating physician and his
findings were also inconsistent with substantial evidence in the
record.  <u>See</u> 20 C.F.R. § 404.1502.

   Ms. Richardson first argues that Ms. Sipala is a treating
source and, as such, her opinion should "outweigh the opinion of
any acceptable source found in the file."  (ECF No. 19, 7).

---

Additionally, nurse practitioners play a critical and increasingly large role
in provision of health care, especially among the low-income populations.
<u>See</u> <u>generally</u>, G. Synoground, M.A. Bruya, <u>Meeting the Healthcare Needs of
Homeless or Low-Income Persons:  Role of the Nurse Practitioner</u>, 4 Clinical
Excellence in Nursing Practice, 138-44 (May 2000) and David E. Kalist and
Stephen J. Spurr, <u>The Effects of State Laws on the Supply of Advanced
Practice Nurses</u>, 4 Int'l Journal of Health Care Finance and Economics, 271-81
(2004).  Moreover, studies have consistently shown that nurse practitioners
have health care outcomes that are substantially similar to primary care
physicians providing the same type of medical service.  <u>See</u> Elizabeth R.
Lenz, et al., <u>Primary Care Outcomes in Patients Treated by Nurse
Practitioners or Physicians</u>, 283 Journal of the American Medical Association,
59-68 (2000) and Elizabeth R. Lenz, et al., <u>Primary Care Outcomes in Patients
Treated by Nurse Practitioners or Physicians:  Two Year Follow-Up</u>, 61 Med.
Care Res. Rev., 332-351 (2004).  Given the substantial autonomy of nurse
practitioners in the provision of medical care, the valuable role nurse
practitioners play in providing low-cost medical care, and the substantially
similar health care outcomes between nurse practitioners and physicians, this
regulation may be deserving of critical examination.  A critical examination
of the current regulation is needed.  Furthermore, it appears that the
restrictive definition of an "acceptable medical source" in the regulations
is not compelled by the authorizing language in 42 U.S.C. § 423(d)(5), which
states that the SSA should consider evidence from the individuals "treating
physician (or other healthcare provider)."

However, as the government notes, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902. See 20 CFR 404.1527(d); 20 CFR 416.927(d).

"Other sources" are separate from "acceptable medical sources," and include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. 20 CFR 404.1513(d). As "other sources" are not "acceptable sources," they cannot be afforded controlling weight as a treating source nor can their opinions alone establish the existence of a medically determinable impairment. [CITE?] Nevertheless, information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairments and the individual's ability to function; it thus can be important and, in accordance with the Act, must be evaluated along with the other relevant evidence in the file. See SSR 06-03p.

Ms. Sipala treated Ms. Richardson regularly from October 2005 onward for both mental and physical conditions, including diabetes with neuropathy, hypertension and hypothyroidism, prescribed numerous medications, and suggested referrals to an orthopedist and podiatrist for specialized treatment. (R. 18). Nevertheless, as a nurse practitioner, Ms. Sipala is an "other

source." 20 CFR 404.1513(d). Her opinion must be weighed alongside other relevant evidence, but it cannot be afforded the controlling or the more significant weight of a treating source. See 20 CFR 404.1513.

In August 2007, Ms. Sipala completed a Medical Assessment of Ability to do Work-related Activities (Physical) form indicating greater limitations than other examining sources in the record. (R. 18). The ALJ did not give Ms. Sipala's opinion "great weight" for the several reasons: that there was no indication that she had specialized training in orthopedics or rehabilitative medicine; that the limitations mentioned on the assessment were not supported by medical evidence, including Ms. Sipala's own symptoms or findings justifying the severe limitations, and reflect few abnormal findings and no musculoskeletal findings, and expressed concern that she "apparently relied quite heavily on the subjective report of symptoms and limitations provided by claimant which she seemed to uncritically accept as true" and were inconsistent with the state agency opinion and consultative reports. Upon review of the record, the Court finds the ALJ's determinations and the weight given to Ms. Sipala's opinion, in light of the fact that she is an "other source under the regulations," are reasonable and supported by substantial evidence.

22

Secondly, Ms. Richardson contends that the ALJ did not consider Dr. Chester's psychiatric findings properly. Dr. Chester found that Ms. Richardson was a victim of abuse and depression, currently has a GAF of 40, and had a GAF of 45 last year. (R. 172). As a physician, Dr. Chester is an "acceptable source," but he does not have the ongoing relationship with the plaintiff that would qualify him as a "treating source" and give his opinion superior weight. See 20 CFR 404.1513; 20 CFR 404.1502. Therefore, his opinion must be weighed equally against other opinions and evidence in the record.

The ALJ gave little weight to the GAF determinations as there was nothing to support either serious symptoms or serious functional libations, and no opinions from any treating source addressing Ms. Richardson's mental capacity to work. (R. 21). Specifically, Ms. Sipala documented and prescribed medication for Ms. Richardson's depression and anxiety, but did not indicate objective findings in her reports, make referrals to mental health specialists, or prescribe an increased dosage of medication in response to Ms. Richardson's purported worsening symptoms. (R. 20). The latest assessment performed for the state, Dr. Walklett's 2007 assessment, ultimately concluded Ms. Richardson retained the capacity to perform work-related tasks from a mental perspective. (R. 21, R. 238). As substantial

evidence in the record supports the ALJ's opinion and Dr.
Chester's findings and opinions are not accorded the highest
weight as he is not a treating physician, the ALJ did not err in
weighing Dr. Chester's opinion.


## VI.  CONCLUSION

Having found the ALJ's analysis to be supported by
substantial evidence at each of the five steps of the sequential
evaluation process, the Court hereby DENIES Plaintiff's Motion
for Summary Judgment or, in the Alternative, Motion for Remand
(ECF No. 19) and GRANTS Defendant's Motion for Summary Judgment
(ECF No. 24).

Despite the informal nature of this letter, it shall
constitute an Order of the Court, and the Clerk is directed to
docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge